

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUN - 6 2016
ARTHUR JOHNSTON
BY_____ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CARLISLE 2010 HISTORIC TAX CREDIT FUND II
LIMITED PARTNERSHIP                                                                PLAINTIFF

VS.                                                      CIVIL ACTION NO. 3:16-cv-424 DPJFKB

REGIONS BANK                                                                        DEFENDANT

## COMPLAINT

### JURY TRIAL DEMANDED

Plaintiff Carlisle 2010 Historic Tax Credit Fund II Limited Partnership ("Carlisle"), by and through its counsel, hereby files this Complaint against Defendant Regions Bank ("Regions"), as follows:

### PARTIES

1.  Carlisle is a limited partnership which is registered and has its principal place of business in Massachusetts. Carlisle is duly registered as a foreign business with the Mississippi Secretary of State. The limited partners of Carlisle are Carlisle Fund II GP LLC, a Massachusetts limited liability company, and Chevron U.S.A., Inc., a Pennsylvania Corporation. The sole member of Carlisle GP Fund II GP LLC is Carlisle Tax Credits, LLC, a Massachusetts limited liability company. The members of Carlisle Tax Credits, LLC are Richard Floreani, a resident citizen of Massachusetts, and Eric Darling, a resident citizen of Massachusetts.

2.  Regions is an Alabama corporation with its principal place of business located in Alabama. Regions may be served with process on its registered agent, CSC of Rankin County, Inc., Mirror Lake Plaza, 2829 Lakeland Drive, Suite 1502, Flowood,

Mississippi 39232.

## VENUE AND JURISDICTION

3. This Court has personal jurisdiction over the parties.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of the parties and the amount in controversy exceeds $75,000.

5. This Court is a proper venue.

## FACTS

6. This case arises out of a renovations project involving the historic "Dickies" building located in downtown Jackson, Mississippi at 736 South President Street. 736 Building Owner, LLC ("Owner") is a Mississippi company which owns the Dickies building. The members of Owner are 736 Building Manager, LLC ("Manager") and 736 Building Tenant, LLC ("Tenant"). Tenant leases the building from Owner, and Manager manages the project.

7. This project originated with Oscar Deleon and another individual, Robert Polk, who were the initial members of Owner. In 2008, Deleon and Polk obtained a construction loan from Regions in the principal amount of $2.1 million dollars. Deleon and Polk personally guaranteed the loan. As additional collateral for the loan, Deleon also pledged certain assets and securities owned by a separate company, Cytec Software Systems, Inc. ("Cytec").

8. The original loan with Regions was not enough to complete construction on the project. Thus, Deleon had to pursue additional financing. Ultimately, additional financing was arranged through two (2) sources: (1) Regions committed to increase its loan from $2.1 million dollars to $2.4 million dollars; and (2) Carlisle agreed to provide

2

historic tax credit financing by making a capital contribution investment of $788,480.00. These transactions were closed simultaneously on October 29, 2010. Pursuant to an Amended and Restated Operating Agreement dated as of October 29, 2010, Carlisle became the "investor member" in Tenant as part of the tax credit financing arrangement. Carlisle would not have invested in this project and would not have closed the tax credit financing without the additional $300,000 funding from Regions.

9. For reasons which were unknown to Carlisle (or Deleon) at the time, Regions refused to honor its modified loan. Without the additional funds, the project suffered financial difficulties. To avoid foreclosure and protect their investments, Carlisle and Deleon were forced to inject additional money into the project. Meanwhile, Regions sold and assigned its loan to another lender.

10. On or about February 27, 2014, Deleon filed Civil Action No. 3:14-cv-222 in this Court ("Deleon lawsuit"), asserting claims based on Regions' refusal to honor its modified loan. In addition to asserting claims in his individual capacity, Deleon also asserted claims on behalf of Cytec and Owner. Carlisle gave its written consent to Deleon to pursue any claims that Owner, as the actual borrower, had against Regions in the lawsuit. At that time, Carlisle did not know and had no reason to know that it too had potential claims to assert against Regions.

11. In or around August, 2015, Regions produced internal e-mails during discovery in the Deleon lawsuit. These documents reveal why Regions refused to honor its modified loan:

> **We capped the loan to limit our exposure to the original loan amount of 2.0M and only provided a 2.4M commitment to the facilitate tax credit release which, in turn would provide necessary funds to complete the project.**

3

*See* Dkt No. 102-4, Civil Action No. 3:14-cv-222.

12. Regions also produced an internal loan history which contains contemporaneous notes that: "this [$2.4m] loan approval is strictly to generate a commitment letter;" that "there will be no additional construction loan for this customer;" and that "the additional amount needed to fund the completion of the project . . . will come from the tax credits." *See* Dkt No. 102-3, pgs 16 and 32, Civil Action No. 3:14-cv-222.

13. Carlisle was unaware of these documents and had no idea they existed until Regions produced them in discovery in the Deleon lawsuit and they became public as part of the pleadings. Carlisle was shocked by what these documents reveal--that when it closed the transaction, Regions had no present intention of honoring its modified loan and that this is simply a "sham" to induce Carlisle to close the tax credit financing. Had Carlisle known the truth at the time of closing, it would not have invested in this project.

### CLAIMS

### COUNT I: FRAUD AND FRAUDULENT CONCEALMENT

14. To establish fraud under Mississippi law, the plaintiff must prove that there was a false representation, that the false representation was material, that the speaker intended that it be acted on by the other in the anticipated manner, that the hearer was ignorant as to its falsity, that the hearer reasonably relied on its truth, and that the hearer suffered consequent and proximate injury.

15. Here, Regions made a false statement of material fact that it was agreeing to commit additional funds to the construction project in the amount of $300,000, when in reality, it had no present intention of doing so at the time that this representation was made. As its internal documents now reveal, Regions clearly intended to make a "sham"

4

loan in order to induce Carlisle to proceed with the simultaneous closing of the tax credit financing. Region's fraudulent misrepresentations were material in that Carlisle would not have closed the tax credits without the additional funding from Regions. In going forward with the closing, Carlisle had a right to reasonably rely on Regions' representations. And, until the truth came to light in this lawsuit, Carlisle was ignorant of Region's true intentions. As a result of Regions' fraud, Carlisle has suffered financial losses because it never would have invested in this project had it known Regions' modified loan was actually a sham.

16. Regions fraudulently concealed its true intentions when the transactions were simultaneously closed on October 29, 2010. Several years later, Region's true intentions were fortuitously uncovered in the context of the Deleon lawsuit.

17. Although Carlisle was generally aware in the interim that Regions had not advanced any additional loan proceeds, neither Carlisle (nor Deleon) knew the real reason for this until Regions' internal documents came to light. Carlisle certainly did not know and could not have discovered through ordinary diligence that Regions actual intentions were the exact opposite of its representations at closing. In fact, Regions has maintained and still maintains that it did not advance additional funds because Deleon did not submit a "proper" draw request. Although it is apparent from its internal documents that this was a ruse and that Regions had no intention of advancing funds regardless of the "form" of the draw request, Carlisle had no reason to suspect Region's motives until it became privy to Regions' internal documents.

## COUNT II: NEGLIGENT MISREPRESENTATION

18.  In order to recover in a cause of action based on negligent misrepresentation, the plaintiff must prove by a preponderance of the evidence: (1) a misrepresentation or omission of a *fact;* (2) that the representation or omission is material or significant; (3) that the person charged with the negligence failed to exercise that degree of care that one is entitled to expect of such person; (4) that he reasonably relied upon the misrepresentation or omission; (5) that he suffered damages as a direct and proximate result of such reasonable reliance.

19.  Here, Regions was at a minimum negligent in failing to disclose its true intentions regarding its modified loan commitment, and as a result, Carlisle was damaged.

Wherefore premises considered Carlisle seeks all available relief to which it may be entitled, including attorney's fees, pre-judgment interest, post-judgment interest and costs against Regions.

Respectfully submitted this the 6 day of June, 2016.

By: _____
W. Thomas McCraney, III (MBN 10171)
*Attorney for Carlisle 2010 Historic Tax Credit Fund II Limited Partnership*

W. Thomas McCraney, III (MB#10171)
MCCRANEY MONTAGNET QUIN & NOBLE, PLLC
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone:   (601) 707-5725
Facsimile:    (601) 510-2939
tmccraney@mmqnlaw.com

6