**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CARLISLE 2010 HISTORIC TAX CREDIT FUND II LIMITED PARTNERSHIP** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 3:16-cv-424-DPJ-FKB**

**REGIONS BANK** **DEFENDANT**

---

# MEMORANDUM IN SUPPORT OF DEFENDANT REGIONS BANK'S MOTION FOR SUMMARY JUDGMENT [DOC. 42]

---

## I. INTRODUCTION[1]

This lawsuit concerns the claims of Plaintiff Carlisle 2010 Historic Tax Credit Fund II Limited Partnership ("**Carlisle**") against Regions Bank ("**Regions**") for fraud and negligent misrepresentation in connection with financing the renovation of the Dickies Building in downtown Jackson, Mississippi (the "**Dickies Building Project**").

In 2008, 736 Building Owner, LLC ("**736 Building Owner**"), the owner of the Dickies Building, obtained the original loan to fund renovations from Regions. On October 29, 2010, Regions and 736 Building Owner modified the loan to extend the amount available from $2.1 Million to $2.4 Million, obligating Regions to fund up to approximately $300,000 in additional funds, conditioned on the borrower fulfilling all terms and conditions necessary to receive advances as set forth in the loan documents. Also on October 29, 2010, Carlisle and 736 Building Owner closed a tax credit transaction whereby Carlisle would make structured investments in certain amounts in exchange for an ownership interest in an entity that would

[1] Regions incorporates by reference the itemization of facts ("**SOF**") as to which there is no genuine issue set forth in its Motion for Summary Judgment. [Doc. 42]. All defined terms herein shall have the same meaning as defined in Regions' Motion for Summary Judgment.

receive the historic tax credits upon completion of the project. Carlisle was not a party to the Modified Loan documents, and Regions was not a party to the Tax Credit Transaction documents.

On February 27, 2014, 736 Building Owner, Oscar De Leon, and Cytec Software Systems, Inc., filed a lawsuit against Regions alleging that Regions breached the Modified Loan when, on February 28, 2011, De Leon requested an advance under the Modified Loan, which Regions allegedly verbally refused without explanation. This lawsuit was ultimately dismissed by the district court with prejudice on the basis that 736 Building Owner was in default as of February 28, 2011, for failure to pay 2010 property taxes on the Dickies Building, and, therefore, Regions had no obligation to fund the loan. There is no other instance when it is alleged a draw request was made under the Modified Loan or that Regions refused a request. Regions sold the loan on March 29, 2012.

On June 6, 2016, Carlisle filed its Complaint against Regions, alleging fraud and negligent misrepresentation, based on Carlisle's theory that Regions induced Carlisle into investing into the Dickies Building Project by representing it would advance funds under the Modified Loan when Regions allegedly had no intention of providing any additional advances.

Pursuant to F.R.C.P. 56, Carlisle's claims should be dismissed with prejudice as a matter of law based on the undisputed facts. First, Carlisle's claims are barred by the three (3) year statute of limitations. The undisputed facts show that Carlisle knew or should have known of its alleged claims as early as 2011 and no later than 2012. As such, Carlisle's claims are time-barred because they lapsed at some point in 2014 or 2015, well before June 6, 2016, the date of the Complaint. Second, Carlisle's claims fail as a matter of law because the undisputed facts show Carlisle cannot satisfy the necessary elements of its claims. The alleged representation that

underlies its claims is promissory in nature rather than a statement of fact, and fraud and negligent misrepresentation claims in Mississippi cannot be predicated upon statements which are promissory in nature. In addition, Carlisle cannot prove the alleged representation was false. All parties understood the Modified Loan documents would control the loan transaction. It is undisputed that 736 Building Owner did not comply with all terms and conditions necessary to receive an advance under the Modified Loan. Therefore, Regions owed no obligation to make an advance. Carlisle's claims also fail because Carlisle had no right to rely on the alleged representation because Carlisle is not a party to the Modified Loan, which terms provide the loan is for the sole and exclusive benefit of 736 Building Owner. Finally, Carlisle cannot demonstrate that it suffered a consequent and proximate injury as a result of Regions' alleged misrepresentation because there was never an obligation to advance funds based on the undisputed facts.

For the reasons set forth herein, the Court should grant Regions' Motion for Summary Judgment and dismiss Carlisle's claims with prejudice.

## II. BACKGROUND

In 2008, Robert Polk ("**Polk**") and Oscar De Leon ("**De Leon**") formed three entities that would provide the ownership and management structure for the Dickies Building Project, including 736 Building Owner, LLC ("**736 Building Owner**"), the owner of the Dickies Building, 736 Building Tenant, LLC ("**736 Tenant**"), the master tenant, and 736 Building Manager, LLC ("**736 Manager**").[2] On June 1, 2008, 736 Building Owner obtained a $2.1 Million construction loan from Regions for the purpose of renovating the Dickies Building (the "**Original Loan**"), guaranteed by Polk and De Leon, and secured by the Dickies Building, an Assignment of Rents, and accounts of Cytec Software Systems, Inc. ("**Cytec**"), a company

[2] SOF at ¶ 5.

owned by De Leon.[3] After the Original Loan was fully funded by March of 2009, 736 Building Owner required additional funds to complete the project.[4] From March 2009 to the middle of 2010, De Leon and Polk searched to obtain additional financing from different lenders to no avail.[5]

On June 2, 2010, Eric Darling ("**Darling**"), on behalf of Carlisle, provided 736 Building Owner with a letter proposing a tax credit transaction whereby Carlisle would make structured investment contributions based on the projected tax credits to be received upon completion of the project and in exchange for a 99.99% ownership interest 736 Tenant, a member of 736 Building Owner (the "**Tax Credit Transaction**").[6] The 2010 Carlisle commitment letter contains no terms that state that Carlisle's commitment is contingent on 736 Building Owner obtaining additional financing from a lender nor does it refer to Regions specifically.[7]

On June 15, 2010, Regions provided a written loan commitment letter to 736 Building Owner to increase the available funds under the loan from $2.1 Million to $2.4 Million, whereby Regions would obligate itself to fund up to approximately $300,000 in additional funds in accordance with the terms of the loan documents (the "**Modified Loan**").[8] Such terms embodied in the Modified Loan documents included, but are not limited to, requiring written draw requests to be submitted in a particular manner and providing that Regions had no obligation to advance funds under the loan if there was an event of default.[9]

The Tax Credit Transaction and Modified Loan closed on October 29, 2010. At closing, Carlisle delivered the first contribution due under the Tax Credit Transaction in the amount of

[3] *Id.* at ¶ 8.
[4] *Id.* at ¶ 14.
[5] *Id.* at ¶¶ 16, 17.
[6] *Id.* at ¶ 18.
[7] *Id.* at ¶ 19.
[8] *Id.* at ¶¶ 21, 22.
[9] *Id.* at ¶ 24.

$525,653.00.[10] Pursuant to the closing statement, the first contribution was applied to borrower charges in the amount of $303,079.34, with the remaining balance of $222,573.66 wired to 736 Building Owner's Regions account to fund the remaining renovations.[11] The closing statement also provided that "Regions Loan funds are not being disbursed through closing. The Regions Loan is a construction loan with disbursements to be made as provided in the loan documents."[12] The initial contribution funded renovations and interest payments until it was completely depleted in February of 2011.[13]

It is alleged that, on February 28, 2011, De Leon requested that Mike Dalton, the loan officer at Regions, for an advance under the Modified Loan, which was allegedly verbally refused by Dalton without explanation.[14] As discussed below, 736 Building Owner and De Leon later filed a lawsuit against Regions alleging that Regions breached the Modified Loan for failure to advance funds in this instance because all conditions precedent to receive an advance were met at the time of the request.[15] However, there is nothing in writing that evidences this request was made in accordance with the terms of the loan documents or that Regions refused any such draw request.[16] Rather, the only written communication between De Leon and Dalton dated February 28, 2011, is an email in which no request for an advance is mentioned.[17] Furthermore, it is undisputed that 2010 property taxes on the Dickies Building were delinquent as of February 28, 2011, which constitutes an event of default under the loan terms.[18] Thus, even if a request was properly submitted, Regions would have been justified in refusing the request because the

---

[10] *Id.* at ¶ 31.
[11] *Id.*
[12] *Id.* at ¶ 29.
[13] *Id.* at ¶ 37.
[14] *Id.* at ¶ 38.
[15] *Id.* at ¶ 54.
[16] *Id.* at ¶ 38.
[17] *Id.*
[18] *Id.* at ¶ 42; *See also* Miss. Code Ann. § 27-41-1.

loan terms provide there is no obligation to advance funds if there is an existing event of default. The loan documents executed at closing control the relationship between Regions and 736 Building Owner under the Modified Loan.[19] If 736 Building Owner had fulfilled all terms and conditions in the loan documents to receive an advance, including but not limited to the submission of a proper written draw request, without any default existing, Regions would have been obligated to advance funds in accordance with the terms of the loan documents.[20]

The project was ultimately completed on June 3, 2011, using funds provided, in part, by a voluntary advance Carlisle made on its second contribution (despite the fact that 736 Building Owner failed to satisfy all conditions precedent to receive the second contribution under the terms of the Tax Credit Transaction) as well as funds drawn from the Cytec Accounts pledged as collateral to secure the Modified Loan and Cytec Loan.[21] In addition, 736 Building Owner defaulted on the Modified Loan for failing to pay the first $18,434.70 monthly payment due on June 1, 2011, and for missing the monthly payments due on August 1, September 1, October 1, and November 1, 2011.[22] On November 23, 2011, Carlisle paid Regions $86,622.20 to bring the Modified Loan current in order to prevent a foreclosure of the Dickies Building.[23]

Throughout 2011 and 2012, De Leon and Carlisle corresponded on multiple occasions regarding a possible lawsuit against Regions based on the alleged failure to fund.[24]

On February 27, 2014, 736 Building Owner, Cytec and De Leon filed a Complaint against Regions in the Circuit Court of Hinds County, Mississippi, First Judicial District, removed by Regions to the United States District Court for the Southern District of Mississippi

---

[19] Ex. 10 at 110; Ex. 14 at 31.
[20] SOF at ¶ 39.
[21] *Id.* at ¶¶ 41, 44, 46.
[22] *Id.* at ¶ 47.
[23] *Id.* at ¶ 49.
[24] *Id.* at ¶¶ 51-53.

on March 18, 2014, as Civil Action No. 3:14-cv-222-KS-MTP (the "**736 Action**").[25] The plaintiffs in the 736 Action asserted a breach of contract action against Regions due to its alleged failure to fund the loan as provided by the terms of the loan documents[26]. Specifically, the plaintiffs alleged that De Leon made a request for a draw on February 28, 2011, which Dalton allegedly verbally refused without explanation despite the fact that all conditions precedent to receive an advance had been met.[27]

Dalton died on July 5, 2014.

On July 15, 2014, Regions filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted and for Failure to Join Indispensable Parties Under Rule 19 or, in the Alternative, Motion to Join Indispensable Parties, seeking to join Darling and Carlisle in the 736 Action on the basis that they had an interest in the subject matter of the 736 Action and that disposing of the case in their absence may impair or impeded their interests.[28] In addition, Regions argued that allowing the 736 Action to proceed in their absence may subject Regions to multiple or inconsistent obligations.[29] Darling, Carlisle, and the plaintiffs in the 736 Action opposed joinder of Darling and Carlisle in the 736 Action, and the Court denied Regions' Motion to join Darling and Carlisle on October 23, 2014.[30]

On May 4, 2016, Carlisle filed a motion to intervene on the eve of trial in the 736 Action.[31] Carlisle argued that it first became aware that it had claims against Regions when certain documents and emails became matters of public record when the plaintiffs in the 736

---

[25] *Id.* at ¶ 54.
[26] *Id.*
[27] *Id.*
[28] *Id.* at ¶ 56.
[29] *Id.*
[30] *Id.*
[31] *Id.* at ¶ 58.

Action attached them exhibits to their response,[32] to Regions' motion for summary judgment filed on March 8, 2016. Carlisle alleged that these documents reveal that "Regions never intended to honor its modified loan and that this was simply a 'sham' to induce Carlisle to close the tax credit financing. Had Carlisle known the truth at the time of closing, it would have not invested in this project." On May 31, 2016, the district court denied Carlisle's motion to intervene as untimely.[33]

On June 15, 2016, the district court granted Regions' motion for summary judgment in the 736 Action and dismissed all of the plaintiffs' claims with prejudice.[34] The district court held that, as of February 28, 2011, the date of De Leon's purported draw request, 736 Building Owner was in default under the terms of the loan documents for failure to timely pay 2010 property taxes on the Dickies Building in accordance with Mississippi law. Accordingly, the district court held that Regions did not breach the loan for declining to advance funds because the loan terms provided there was no obligation to advance funds if there exists an event of default.[35] On April 18, 2017, the United States Court of Appeals for the Fifth Circuit affirmed the district court's order and final judgment dismissing all claims in the 736 Action with prejudice.[36]

On June 6, 2016, Carlisle filed the instant lawsuit asserting claims of "fraud and fraudulent concealment" and negligent misrepresentation against Regions based on the allegation that Regions induced Carlisle to invest in the Dickies Building Project with a "sham" loan that Regions never intended to fund.

---

[32] *See* 736 Action at [Doc. 102].
[33] *Id.*
[34] *Id.* at ¶ 59.
[35] *Id.*
[36] *Id.* at ¶ 61.

## III. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986).

## IV. LAW AND ARGUMENT

### A. Plaintiff's Claims are Time-Barred.

In Mississippi, fraud and negligent misrepresentation claims are subject to the three (3) year statute of limitations set forth in Miss. Code Ann. § 15-1-49, which provides that "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-49; *Anderson v. LaVere*, 136 So. 3d 404, 411 (Miss. 2014); *Carter v. Citigroup, Inc.*, 938 So. 2d 809, 817 (Miss. 2006). The three-year statute of limitations begins to run when the cause of action accrues, and the "cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested." 136 So. 3d at 411 (citing *Bullard v. Guardian Life Ins. Co. of Am.*, 941 So. 2d 812, 815 (Miss. 2006) (quoting *Forma v. Miss. Publishers Corp.*, 14 So. 2d 344, 346 (1943)). In Mississippi, "a cause of action for deceit accrues upon the completion of the sale induced by such false representation, or upon the consummation of the fraud." *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 509 (5th Cir. 2008) (citing *Black v. Carey Canada, Inc.*, 791 F. Supp. 1120, 1123 (S.D. Miss. 1990)).

Carlisle filed its Complaint on June 6, 2016. Therefore, Carlisle's claims are barred if they accrued on or before June 5, 2013. The Court should dismiss Carlisle's claims with

prejudice because Carlisle's claims accrued as early as May of 2011 and no later than mid-2012, when Carlisle learned of Regions' alleged refusal to advance and De Leon's allegations of Regions' wrongdoing.

As the record attests, De Leon communicated to Carlisle that Regions failed and/or refused to advance funds under the Modified Loan as early as May of 2011:

Page 17

Q. And I'm going to give you this to refresh your recollection. This is Exhibit 3, and **it's an email from May of 2011.** And I believe it's from you to Robert Polk and to Oscar, and it just copies you on it. Is this an advance that you made on the tax credit monies for the project?
A. Yes, it is.
Q. Was this advance made as a result of Oscar

Page 18

allegedly making a draw request and it not being honored?
MR. MCCRANEY: Let me just object to the form. Go Ahead.
MR. BUFFINGTON: That's fine.
A. I would say it's a result of Oscar calling me, explaining that he had been advancing money to the project but that they still needed more, and asking if I could advance a portion of the second installment, which I agreed to do, roughly half of it.
BY MR. BUFFINGTON:
Q. Right. And do you recall whether or not during those conversations about you advancing this money y'all discussed a draw request with Regions?
A. **I believe at this point, I knew that Regions was not advancing money.** I wish I had a clear recollection of exactly when I found that out**. It may have been in this call, which happened maybe a week or two earlier, in April, I believe.**

Page 67

Q. Okay. Do you remember either for yourself or

on behalf of the Carlisle companies ever asking Oscar whether Regions made any advances under the 2.4 million dollar loan?

A. I don't recall that particular question. I would just say again that I was certainly aware that they had not funded all of the money. I made the assumption that it wasn't funded in the normal course of business because of things that happened, so I had no sympathy for Oscar at the time.

Q. I understand. I want to take you back to Exhibit 3, the contribution that you made – the early contribution that you made of $50,000. **Did Oscar explain to you why he needed that $50,000?**

A. **I'm sure he did,** but it probably wouldn't – it may not sort of satisfy your expectations of an explanation, but, yes.

Page 68

Q. **In the conversations surrounding the $50,000 early advance,** I know you had some conversations you mentioned with Oscar. Did those conversations involve draws under **the Regions loan?**

A. I would have to go back to what I said, which is **I'm pretty sure that they did**, but I couldn't tell you that I recall what they were. **If someone calls me up and says, "Hey, we have run out of money, and we need an advance on our next installment," I'm going to ask questions.**

Ex. 10 at 17:18-18:19, 67:6-22, 68:10-19 (emphasis added).

In addition, Carlisle admits having numerous conversations with De Leon in 2011 and 2012 about a possible lawsuit against Regions due to the alleged failure to fund the loan.[37] In June of 2012, De Leon and Darling corresponded with attorneys regarding a potential lawsuit against Regions.[38] By email dated July 20, 2012, De Leon reiterated his allegation that Regions failed to fund:

> I have asked the attorneys to advise me and they have. I have told them to give you the rights to negotiate with Nathan's group, and to provide me with the

[37] SOF at ¶¶ 51-53.
[38] *Id.* at ¶ 52.

authority to pursue my matters with Regions.

. . .

And now when I want to pursue a "just" fight against a bank that made promises to me and failed to keep them and essentially provided a "death" penalty to my company, I find myself seemingly "ousted" because I want to correct this problem.

. . .

"That pretty much fell apart **when Regions failed to fund** . . ."[39]

Based on the above, Carlisle clearly had knowledge of the alleged conduct giving rise to its claims against Regions as early as 2011 and no later than 2012. Even assuming *arguendo* Regions did make a fraudulent or negligent misrepresentation to induce Carlisle with respect to the Modified Loan, which is denied, it necessarily would have been made on or before March 29, 2012, when Regions sold the loan. Thus, at the very latest, Plaintiff's claims accrued on March 29, 2012, and lapsed on March 29, 2015. Therefore, Plaintiff's claims are time-barred.

Based on the undisputed facts, there is no tolling argument available to Carlisle. Miss. Code Ann. § 15-1-67 provides that "[i]f a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, **or with reasonable diligence might have been, first known or discovered.**" Miss. Code Ann. § 15-1-67 (emphasis added). "Accordingly, the plaintiffs have a two-fold obligation to demonstrate that (1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover it." *Stephens v. Equitable Life Assur. Soc'y of the United States*, 850 So.2d 78, 84 (Miss. 2003); *see also Bland v. Fleet Fin., Inc.*, 318 F. Supp. 2d 392 (N.D. Miss. 2004) (Summary judgment was granted to

[39] *Id.* at ¶ 53.

corporations' on fraudulent misrepresentation claims because the tolling provisions of Miss. Code Ann. § 15-1-67 were inapplicable, and thus individuals' claims were barred by the three year statute of limitation in Miss. Code Ann. § 15-1-49, where there was no evidence that the corporations engaged in affirmative acts of concealment that prevented the individuals from discovering their claims in a timely manner, in that the individuals' allegations instead focused on the corporations' alleged conduct prior to, and contemporaneous with, the purchase of the insurance policies.); *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 509 (5th Cir. 2008) (Car buyers' state law claims brought against an auto financier more than six years after their financing transactions were untimely, and buyers could not toll the limitations period using Miss. Code Ann. § 15-1-67 because they simply failed to allege a subsequent act of concealment separate from the alleged fraud underlying the cause of action.); *Reich v. Jesco, Inc.*, 526 So. 2d 550, 552 (Miss. 1988) (To establish fraudulent concealment and toll the running of the statute of limitations there must be shown some act or conduct of an affirmative nature designed to prevent, and which does prevent, discovery of the claim.).

There is no evidence of any affirmative act or conduct on the part of Regions that was designed to prevent, or did prevent, the discovery of Carlisle's alleged claims nor does the Complaint allege such act or conduct. Furthermore, Carlisle failed to conduct any reasonable due diligence. Carlisle admits it became aware of the alleged refusal to advance funds as early as 2011, while also taking the position that, until 2016, it was unaware that such refusal was the result of Regions' wrongdoing. If Carlisle is to be believed, Carlisle necessarily failed to conduct any reasonable due diligence after it became aware of De Leon's allegations of Regions' wrongdoing in 2011. Carlisle's position is untenable in light of the numerous and repeated communications between Carlisle and De Leon throughout 2011 and 2012 that specifically

reference allegations of Regions' wrongdoing in connection with the failure to advance funds. The undisputed facts establish that either (i) Carlisle failed to perform even a minimal amount of due diligence to investigate and discover whether it had claims arising from Regions' alleged wrongdoing, or (ii) Carlisle knew of its claims and chose not to pursue them within the statutory period for reasons unknown. In either case, tolling is not available to Carlisle under Miss. Code Ann. § 15-1-67 or otherwise.

## B. Carlisle's Claims Fail as a Matter of Law.

### 1. Fraud

In Mississippi, in order to establish fraud, the plaintiff must prove:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Rankin v. Brokman*, 502 So. 2d 644, 646 (Miss 1987) (citations omitted). The person alleging fraud must prove it by clear and convincing evidence. *Metropolitan Life Ins. Co. v. Hall*, 118 So. 826, 827 (Miss. 1928).

In support of its fraud claim, Carlisle alleges that Regions made a false statement of material fact that it was agreeing to commit additional funds under the Modified Loan when in fact Regions never had the intention of advancing additional funds, all in an effort to induce Carlisle to invest in the Dickies Building Project.

First, Carlisle's fraud claim fails because the representation – that Regions would advance additional funds in accordance with the terms of the loan documents – is promissory in nature and is not a statement of fact. In Mississippi, "[i]t is the general rule that fraud cannot be predicated upon statements which are promissory in their nature when made and which relate to

future actions or conduct, upon the mere failure to perform a promise – nonperformance of a contractual obligation – or upon failure to fulfill an agreement to do something at a future time . . .” *Credit Industrial Co. v. Adams County Lumber & Supply Co.*, 60 So. 2d 790,  (Miss. 1952) (“The reasons for the rule . . . are that a mere promise to perform an act in the future is not, in a legal sense, a representation and that a mere failure to perform it does not change its character.”) (citations omitted); *see also Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992) (“[A] claim of fraudulent representation cannot be predicated on a promise relating to future actions. Fraudulent misrepresentations must be related to past or presently existing facts.”) (citations omitted); *House v. Holloway*, 258 So. 2d 251, 253 (Miss. 1972 (Fraud cannot be predicated upon statements which are promissory in nature.)

Furthermore, even if the alleged representation is actionable for purposes of a fraud claim, Carlisle cannot prove the representation was false. When the Modified Loan closed, there was no present intention on the part of Regions to never fund the Modified Loan. It is undisputed by all parties that the terms of the Modified Loan controlled the loan transaction.[40] Regions would have been obligated to advance funds in accordance with the terms of the loan documents had 736 Building Owner fulfilled all terms and conditions in the loan documents to receive an advance, including the requirement that there be no existing event of default or the requirement related to submission of written draw requests.[41]

As discussed above, it is undisputed that 736 Building Owner did not comply with all terms and conditions necessary to receive an advance as of February 28, 2011. It is alleged that, on February 28, 2011, De Leon visited Dalton’s office and verbally requested an advance under the Modified Loan to pay Deranz’s eighth application for payment, which Dalton allegedly

[40] Ex. 10 at 110; Ex. 14 at 31.
[41] SOF at ¶ 39.

refused without providing any explanation whatsoever. De Leon testified that he responded: "All right. I'll finish up myself with my own money."[42] It is undisputed that there is nothing in writing that evidences De Leon's alleged verbal request or Dalton's alleged refusal to advance.[43] The only written communication between De Leon and Dalton dated February 28, 2011, is an email that makes no mention of any request for an advance under the Modified Loan.[44] In addition, by emails dated March 4 and March 7, 2011, De Leon notified Regions that he delivered a check to Deranz in the amount of $21,062.43, the total amount owed to Deranz as of February 28, 2011, using funds transferred from the pledged Cytec Accounts at his request.[45] These emails similarly make no mention of De Leon's verbal request for an advance on February 28, 2011.[46] De Leon admits that, after February 28, 2011, he never followed up with Dalton regarding Dalton's alleged refusal to advance under the Modified Loan.[47]

It is undisputed that 736 Building Owner failed to fulfill all conditions precedent for an advance under the terms of the Modified Loan, including that the request for an advance be made in writing. Even assuming De Leon did submit a proper, written draw request, Regions would have been justified in refusing the advance because it is undisputed that 736 Building Owner was in default for failure to pay 2010 property taxes when the purported request was made on February 28, 2011, as this Court previously held.[48] *See* Miss. Code Ann. § 27-41-1. Thus, Regions owed no obligation to make an advance under the Modified Loan on February 28, 2011. Indeed, 736 Building Owner's failure to timely pay property taxes had been a continuing problem under the Original Loan. As evidenced by the closing statement, 2008 and 2009

---

[42] Ex. 5 at 67.
[43] SOF at ¶ 38.
[44] *Id.*
[45] *Id.* at ¶ 41.
[46] *Id.*
[47] *Id.* at ¶ 40.
[48] *Id.* at ¶ 42.

property taxes were substantially delinquent until they were paid at closing on October 29, 2010, using part of Carlisle's first tax credit funding contribution.[49] Thus, 736 Building Owner's failure to pay property taxes further reduced the net amount of Carlisle's first contribution that was ultimately wired to 736 Building Owner's account after paying the charges, liens, attorneys' fees and other costs associated with closing. In addition, the failure to pay 2010 taxes was a continuing issue of concern to Regions due to Plaintiffs' failure to pay 2008 and 2009 ad valorem taxes on the Dickies Building securing the loan.

Carlisle has not and cannot set forth a single other instance when Regions refused a draw request. Thus, it is undisputed facts establish that between the closing date, October 29, 2010, and the date Regions sold the loan, March 29, 2012, 736 Building Owner never made a proper draw request at a time when all conditions precedent to receive an advance were satisfied.

In addition, Carlisle had no right to rely on the alleged representation. Regions is not a party to Carlisle's commitment letter nor does the letter refer to Regions or state that Carlisle's commitment to 736 Building Owner is contingent on obtaining additional financing. In addition, Regions' commitment letter provided, among other things, that "[t]his Commitment has been issued to Borrower for Borrower's sole and exclusive benefit, and no third party shall have rights hereunder."[50] Furthermore, Carlisle is not a party to the Regions commitment letter or any of the Modified Loan documents governing advances under the Modified Loan. Therefore, Carlisle's fraud claim should be dismissed with prejudice because Carlisle had no right to rely any the alleged representation.

Finally, Carlisle cannot demonstrate that it suffered a consequent and proximate injury as a result of Regions' alleged misrepresentation. As discussed above, it is undisputed Regions

---

[49] *Id.* at ¶ 28.
[50] *Id.* at ¶ 22.

never owed any obligation to advance funds to 736 Building Owner under the Modified Loan. Absent an obligation to advance funds in accordance with the terms of the loan documents, Carlisle cannot claim to have suffered a consequent and proximate injury as a result of Regions' refusal to advance funds. Based on the undisputed facts, Carlisle cannot establish the injury element of its fraud claim as a matter of law and, therefore, the Court should dismiss Carlisle's fraud claim with prejudice.

**2. Negligent Misrepresentation**

Carlisle's negligent misrepresentation claim fails as a matter of law for the same reasons that require dismissal of Carlisle's fraud claim. To establish a claim of negligent misrepresentation, Carlisle must prove:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons; (4) that they reasonably relied upon the [.] misrepresentation or omission; (5) that they suffered damages as a direct and proximate result of such reasonable reliance.

*Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992).

Like fraud, the first element of negligent misrepresentation, misrepresentation of a fact, must concern a past or present fact as contrasted with a promise of future conduct. *Id.* (citations omitted). Since Carlisle predicates its claim of negligent misrepresentation on Regions' promise of future conduct – to provide additional funds in accordance with the terms of the loan documents – Carlisle cannot prove an essential element of its claim. In addition, for the reasons discussed above, Carlisle had no right to rely on such misrepresentation and cannot show any damages as a proximate result of such reliance. Accordingly, Carlisle's negligent misrepresentation claim must be dismissed with prejudice.

## V. CONCLUSION

Based on the foregoing reasons, there is no genuine issue of material fact and Regions is entitled to a judgment as a matter of law as to all claims. Accordingly, Regions requests the Court enter an Order granting its Motion for Summary Judgment, dismissing Carlisle's claims with prejudice. In addition, Regions seeks reimbursement for attorneys' fees and costs incurred in this matter, and any further relief the Court deems appropriate under the circumstances.

RESPECTFULLY SUBMITTED, this the 18th day of May, 2017.

**REGIONS BANK**

By: _/s/ Robert Parrott_____________
*One of Its Attorneys*

OF COUNSEL:

C. Phillip Buffington, Jr. (MSB No. 7035)
ADAMS AND REESE LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, Mississippi 39157
Telephone: 601-353-3234
Facsimile: 601-355-9708
phil.buffington@arlaw.com

G. Robert Parrott II (MSB No. 103970)
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: 504-585-0336
Facsimile: 504-553-9776
robert.parrott@arlaw.com

## CERTIFICATE OF SERVICE

I certify that I have this day caused to be delivered through the ECF filing system a true and correct copy of the above and foregoing document to the clerk of the court and to all counsel of record, including:


W. Thomas McCraney III (MSB #10171)
MCCRANEY MONTAGNET QUIN & NOBLE, PLLC
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
Facsimile: (601) 510-2939
tmccraney@mmqnlaw.com
*Counsel for Plaintiff*


DATED this the 18th day of May, 2017.

/s/ Robert Parrott
Robert Parrott (MSB No. 103970)