UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CARLISLE 2010 HISTORIC TAX CREDIT
FUND II LIMITED PARTNERSHIP                                              PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:16-CV-424-DPJ-FKB

REGIONS BANK                                                             DEFENDANT

ORDER

Defendant Regions Bank ("Regions") seeks summary judgment in this fraud and negligent-misrepresentation case. Because Plaintiff's claims are time barred, Regions's motion [42] is granted.

I.     Facts and Procedural History

This case flows from loans Regions extended regarding property located at 736 South President Street in Jackson, Mississippi, known as the Dickies Building. The history of the transaction began long before Plaintiff Carlisle 2010 Historic Tax Credit Fund II Limited Partnership ("Carlisle") became involved.

In 1995, Robert Polk, who is not a party to this case, purchased the property intending to convert it to a mixed-use commercial and residential facility. In 2001, Oscar De Leon, also not a party, began leasing office space in the Dickies Building and became interested in investing in the renovation project. To that end, in 2008 and 2009, Polk and De Leon formed three entities that would provide the ownership and management structure for the project: 736 Building Owner, LLC, owned the Dickies Building; 736 Building Tenant, LLC, was the master tenant; and 736 Building Manager, LLC, was the building manager.

On June 1, 2008, 736 Building Owner obtained a $2.1 million construction loan from Defendant Regions to renovate the Dickies Building. By March 2009, Regions had fully funded

all amounts available under this original loan, but 736 Building Owner needed more money to complete the project. De Leon says he approached Regions loan officer Mike Dalton about obtaining additional financing, and Dalton "said he couldn't fund any more at that point."[1] 736 Building Owner Dep. [42-5] at 39.[2]

Ultimately, more funding was arranged through two sources. First, on June 2, 2010, Eric Darling, on behalf of Plaintiff Carlisle, provided 736 Building Owner with a letter proposing a tax-credit transaction under which Carlisle would make structured investments in the Dickies Building project based on the projected tax credits to be received.[3] In return, Carlisle would obtain a 99.99% ownership interest in 736 Building Tenant, provided that upon receipt of the historic tax credits, 736 Building Owner would pass them through to 736 Building Tenant.

Second, on June 15, 2010, Regions provided a written commitment letter to 736 Building Owner for a modified loan of up to $2.4 million. Regions considered Carlisle's involvement as a tax-credit investor part of the plan to get the Dickies Building project completed. Regions also

---

[1] Plaintiff disputes "what Dalton allegedly told Deleon [sic] about Regions not being able to provide additional financing" but does not point to record evidence to the contrary. Pl.'s Resp. [47] at 4; *see* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").

[2] In this Order, all pinpoint citations to deposition testimony will refer to the CM/ECF pagination.

[3] "The Federal Historic Preservation Tax Incentives program encourages private sector investment in the rehabilitation and re-use of historic buildings. . . . A 20% income tax credit is available for the rehabilitation of historic, income-producing buildings that are determined by the Secretary of the Interior, through the National Park Service, to be 'certified historic structures.'" Technical Preservation Services, https://perma.cc/QW4F-UJ8G (last visited September 7, 2017). A similar credit exists under Mississippi law. 25% State Tax Credit, https://perma.cc/K6MK-2QP7 (last visited September 7, 2017).

understood that Carlisle's participation in the project depended on Regions's commitment of an additional $400,000 to the project.

On October 29, 2010, 736 Building Owner executed a Construction Loan Agreement and Promissory Note in favor of Regions that modified the maximum amount available on the construction loan from $2.1 million to $2.4 million. That same day, Carlisle became a 99.99% member of 736 Building Tenant, and 736 Building Tenant became a 30% member of 736 Building Owner. Also on October 29, 2010, Carlisle delivered the first contribution due under the tax-credit transaction with 736 Building Owner.

According to De Leon, he had a conversation with Dalton in a February 28, 2011 meeting during which he requested a draw on the modified loan. Dalton told him Regions was "not funding any more on that loan." 736 Building Owner Dep. [42-5] at 25. When Carlisle became aware that Regions would not further fund the project, Carlisle contributed additional sums in 2011.

Five years later, on June 6, 2016, Carlisle sued Regions. It asserts fraud and negligent-misrepresentation claims based on Regions's statement "that it was agreeing to commit additional funds to the construction project in the amount of $[4]00,000, when in reality, it had no [then] present intention of doing so." Compl. [1] ¶ 15. At the close of discovery, Regions moved for summary judgment. The matters raised in the motion have been fully briefed, and the Court has personal and subject-matter jurisdiction and is prepared to rule. [4]

---

[4] Pursuant to Local Rule 7(b)(2)(B), motions other than discovery motions "may not exceed four pages, excluding exhibits, [and] may contain only the grounds for the request." In this case, Regions submitted a 20-page motion with a lengthy Itemization of Facts as to Which There is No Genuine Dispute, in addition to its 20-page memorandum in support of its motion. Regions's filings prompted Carlisle to file a 21-page response in addition to its 17-page memorandum in response to Regions's motion. The Court has elected to consider all of the documents filed on Regions's motion, but in the future counsel should follow the local rule and

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

---

confine their filings in support of and in response to dispositive motions to the 35-page limitation.

4

III.     Analysis

The crux of Carlisle's claims is that "Regions made a false statement of material fact that it was agreeing to commit additional funds to the Dickies[] project, when in reality, it had no . . . intention of doing so at the time this representation was made." Pl.'s Mem. [48] at 12. Regions argues that Carlisle's claims are time-barred; alternatively, it asserts that they fail as a matter of law. The Court agrees that there are substantive problems with Carlisle's case, but because the claims were filed after the limitation period expired, there is no need to address the merits.

Carlisle's fraud and negligent-misrepresentation claims are subject to Mississippi's general three-year statute of limitations. *Howard v. CitiFinancial, Inc.*, 195 F. Supp. 2d 811, 819 (S.D. Miss. 2002). Carlisle filed this lawsuit on June 6, 2016, so if its claims accrued before June 6, 2013, they are time-barred. "Under Mississippi law, 'a cause of action for "deceit accrues upon the completion of the sale induced by such false representation, or upon the consummation of the fraud."'" *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 509 (5th Cir. 2008) (quoting *Black v. Carey Canada, Inc.*, 791 F. Supp. 1120, 1123 (S.D. Miss. 1990); *Dunn v. Dent*, 153 So. 798, 798 (Miss. 1934)).

There is no dispute that Carlisle became aware of Regions's alleged refusal to further fund its loan no later than 2012. *See* Pl.'s Resp. [47] ¶¶ 45, 51, 52. But Carlisle says that the statute of limitations was tolled by Regions's fraudulent concealment of the claims. Section 15-1-67 of the Mississippi Code provides:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

To establish tolling under the fraudulent-concealment doctrine, a plaintiff must "demonstrate that (1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due

5

diligence was performed on [its] part to discover it." *Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So. 2d 78, 84 (Miss. 2003).

Starting with the first requirement, "Mississippi law is unambiguous: [a p]laintiff[] must prove a *subsequent* affirmative act of fraudulent concealment to toll the [statute of] limitations." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 463–64 (5th Cir. 2003) (emphasis added). Carlisle described its proof on this element as follows:

> Regions fraudulently misrepresented that it was committing "new money" to this project, when in fact that bank had placed an undisclosed "no funding" restriction on the [m]odified loan to ensure that no additional funds would be advanced. This undisclosed restriction was buried deep within Regions's internal loan documents and concealed from Carlisle.

Pl.'s Mem. [48] at 13.

Specifically, on June 10, 2010—five days *before* Regions issued its commitment letter on the $2.4 million modified loan—Shane Hyde, the Regions underwriter to whom the modification request was assigned, noted in Regions's internal computer system, "The purpose of this request is to provide a commitment to the project completion. . . . This loan will not be funded, for commitment letter purposes only." Cocke Dep. [47-2] Ex. 3 at REGIONS_001114. A similar June 10, 2010 entry made by Ken Difatta, area manager for business-loan underwriting, confirmed that "[t]his approval is strictly being generated in order to issue a commitment letter. The perm[anent] loan for this project has already funded and the additional amount needed to fund the completion of the project ($400M) [sic] will come from the tax credits." *Id.* at REGIONS_001112.

A similar entry occurred in an August 5, 2010 note by loan administrator Russ Brooks: "[T]here is a clause in the history text that state[s] this loan approval is strictly to generate a commitment letter. A pervious construction loan has already been termed out. There will be no additional construction loan for this customer." *Id.* at REGIONS_001096; *see also* Cocke Dep.

6

[47-2] Ex. 4 at REGIONS_009327 ("We capped the loan to limit our exposure to the original loan amount of 2.0M and only provided a 2.4M commitment to [] facilitate tax credit release which, in-turn would provide necessary funds to complete the project. Any additional funds needed were injected by the customer.").

While Regions has explanations for these statements, the evidence—when viewed in a light most favorable to Carlisle—suggests that Regions never intended to fund the loan. But the statements do not show that Regions took any subsequent affirmative action to conceal Carlisle's claims. And under Mississippi law, a defendant's failure to disclose its then-present "*undisclosed* intention of not performing" the promise at the heart of a fraud claim is not the type of subsequent affirmative act designed to prevent the plaintiff from discovering its claims. *Holland v. Peoples Bank & Trust Co.*, 3 So. 3d 94, 100 (Miss. 2008) (quoting *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1360 (Miss. 1990)) (emphasis added). A plaintiff seeking to demonstrate fraudulent concealment to toll the statute of limitations must show something more. Carlisle's proof falls short.

Carlisle also fails to point to evidence showing it acted with due diligence to discover its claims. Carlisle says that it "could not have discovered through ordinary diligence that Regions'[s] actual intentions were the exact opposite of its representations." Pl.'s Mem. [48] at 14. But it does not explain what "due diligence [it] performed" to discover its claims. *Stephens*, 850 So. 2d at 84. Carlisle became aware that Regions was refusing to further fund the loan in 2011. It even discussed possible legal action against Regions with De Leon in 2011 and 2012. *See, e.g.*, De Leon July 20, 2012 email [42-12] at 17 (stating that De Leon intended to pursue suit against Regions).

7

Despite this knowledge, Carlisle did nothing to attempt to discover the reason for that refusal or whether Carlisle had any claims against Regions as a result. Because Carlisle fails to establish either of the necessary elements to toll the statute of limitations based on fraudulent concealment, its claims against Regions are time-barred.

IV.     Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Regions's Motion for Summary Judgment [42] is granted. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 11th day of September, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE